In the Matter of the Application of the Executors, etc., of PETER DOLAN, deceased, for leave to sell his real estate.

In the Matter of the Petition of FELIX DONNELLY, a purchaser, to be relieved of his purchase.

In the Matter of the Petition of WILLIAM NELSON, Jr., to be relieved of his purchase.

In the Matter of the Petition of FREDERICK MOELLER, to be relieved of his purchase.

The will of D. gave three legacies which were directed to be paid out of the rents, issues and profits of his real and leasehold estate, and were made a specific charge thereon. The executors made application under the statute (2 R. S. 100, § 1, *et seq.*), to the surrogate for authority to mortgage, lease or sell sufficient of the testator's real estate to pay his debts. Under an order in such proceedings directing the sale of the real estate, it was sold in parcels, and certain of the purchasers refused to complete the purchase, alleging defective title. One of the alleged defects was that two of the three legatees were not served with a copy of the order to show cause. By the sale, if completed, sufficient would be secured to pay the debts and said legacies. *Held*, that the objection was untenable; that all that was required was a substantial compliance with the statute; it did not direct a service on said legatees (§§ 6, 7); and while, if required, notice should be given them, no injury could result here by a completion of the sale, as the legacies could then be paid; and so this was no reason for relieving the purchasers.

*Jordan* v. *Poillon* (77 N. Y. 518), distinguished.

It was objected that the surrogate had not jurisdiction to order more property to be sold than was necessary to pay the debts; the order to sell the whole was made upon the ground that it appeared a sale of a portion would be prejudicial to the heirs and devisees. *Held*, that the statute (2 R. S. 103, § 19) vested the surrogate with discretionary power to determine as to the necessity for selling all, and whether he committed an error or not, it was not necessary to determine here, as it was at most a defect or irregularity of which the parties in interest alone could complain, and they not having sought a review of the order upon this ground, it was final and conclusive. (§ 1, chap. 82, Laws of 1850.)

Also *held*, that for the same reason, an objection, that the sale made was in excess of the debts, was not available to the purchasers.

The will, after a devise of certain premises to the testator's wife for life, devised to the executors the residue of his real estate in trust, to apply

the rents as specified during the life of the wife, and upon her death directed the executors to convey to such of his children as should then be living, or to their lawful issue then surviving, specifying what particular parcel should be conveyed to each child, and among them to T., a daughter, who was served with the order to show cause. It was objected that none of the executors as devisees were served with the order, and that no steps were taken to preclude the issue of T., in case she should die before her mother leaving issue. *Held* untenable.

It was objected that two of the executors named in the will, who had not qualified, should at least have been served with notice, as they were still vested with, and retained an interest in, and were responsible for, the trust funds. This objection was not taken before the surrogate. The will directed that only such executors as qualified should be deemed executors. *Held,* that as the objection was one which might have been obviated, had it been raised before the surrogate, by showing that the persons so named were dead, or had renounced, it could not be raised here; also that as said persons did not qualify, it was to be presumed that letters testamentary were issued to the others, and that the former were thereupon under the statute to be deemed to have been superseded (2 R. S. 71, § 15); also that by the terms of the will those not qualifying were not executors.

The order directed a sale of the right, title and interest of the testator at the time of his death. *Held,* that in the absence of proof of defect of title, or a failure to show good title, this furnished no ground for the refusal to complete the purchase.

It was objected that the petition only asked for a sale. It appeared therefrom that a mortgage or lease would be ineffectual to accomplish the purpose intended. *Held,* that the objection was untenable.

*In re Dolan* (26 Hun, 46), reversed.

(Argued February 28, 1882; decided March 14, 1882.)

Appeals from orders of the General Term of the Supreme Court, in the first judicial department, made January 11, 1882, which reversed orders of the surrogate of the county of New York, denying applications of the purchasers above named to be released from purchases made by them respectively, under a sale in the proceeding first above entitled; the orders of General Term granted the application. (Reported below, 26 Hun, 46.)

The petition of the executors of Peter Dolan, upon which the proceedings first above entitled were instituted, set forth, in substance, that their testator died in 1876, leaving personal property insufficient to pay his debts, which had been applied in due course of administration; that the debts unpaid

amounted to over $15,000 exclusive of interest; that their testator died seized of a large amount of real estate which is described in the petition in eight parcels, valued in all at $204,000, subject to mortgages to the amount of about $78,500; that the expenses for repairs, insurance and taxes, etc., upon the real estate exceeded the sum of $11,000, annually, while the income did not exceed $14,000; that the heirs and devisees are Theresa, James P. and Edward A. Dolan, children of the deceased; that Frances Dolan, mentioned in the will, died leaving no issue.

The petitioners asked for authority to sell so much of the real estate as was necessary to pay the debts.

The clauses of the will material to the questions in controversy are as follows:

"*First.*— I direct that my funeral expenses and all my just debts be paid out of my personal estate not specifically bequeathed, and if my personal estate should not be sufficient to pay and discharge said funeral expenses and debts, I direct and hereby authorize my executors, hereinafter named, to apply so much of the rents, issues and profits of my real and leasehold estate as may be necessary to pay and discharge the same in full.

"*Third.*— I give and devise to my said wife the dwelling-house and lot of land upon which the same is erected, and known by the street number 202 West Twenty-fourth street, in the city of New York, for and during her natural life; I also give and bequeath to my said wife for and during her natural life an annuity of $2,000, to be paid to her by my executors hereinafter named, which said devise and said annuity hereby made and given to my said wife are in lieu of her dower and of any distributive share of my estate, real or persanal, to which she might otherwise be entitled.

*Fourth.*— I give and bequeath to my brother, Edward Dolan, the sum of $5,000; to the Rev. David A. Merrick, pastor of the Roman Catholic church of St. Francis Xavier in the city of New York, or whoever may be pastor at the time of my decease, the sum of $3,000, and to the Society of St. Vincent de Paul in the city of New York, the sum of $1,000, which said

legacies and bequests in this the fourth article of my will are to be paid by my said executors out of the rents, issues and profits of my real and leasehold estate at such time and in such manner as they may deem for the best interest of my estate, and without interest, and I do hereby charge my said estate, real and leasehold, with the payment of said legacies and bequest.

*Fifth.*— All the rest, residue and remainder of my real and leasehold estate, wheresoever the same may be situated at the time of my decease, I give and devise to my executors, hereinafter named, upon the trusts hereinafter particularly mentioned, hereby giving and granting to my said executors full power and authority to take and receive all of the rents, issues and profits of my said real and leasehold estate, and if, in their judgment, it should at any time become necessary for the purpose of raising money to pay off and discharge any lien, by way of mortgage, or otherwise, now or which may hereafter be upon or affect my said real or leasehold estate, or to rebuild or repair the same ; to execute, acknowledge and deliver one or more mortgages upon the whole, or upon such part or portion of said estate as they may deem necessary for the purpose of raising such moneys and from and out of such rents, issues and profits, to pay and discharge all taxes, assessments, interest on mortgages, insurance and such necessary repairs to my said estate, real and leasehold, as the same may become due and payable ; including such taxes and assessments, and the interest on any mortgages upon the premises devised to my said wife, and also the aforesaid annuity shall be paid to her in equal half-yearly payments, and after the payment of such taxes, assessments, interest, insurance, and said annuity to my said wife, to apply the remainder of such rents, issues and profits, or so much thereof as they may deem necessary, toward the support, maintenance and education of my children, Frances Dolan, Theresa Dolan, James P. Dolan and Edward A. Dolan, during the life-time of my said wife, and toward the payment of the aforesaid legacies and bequests provided for in the fourth paragraph of this, my will ; and upon the decease of my said wife, to convey by good

and sufficient deeds, or other instruments, in fee-simple all my real and leasehold estate to such of my children as shall then be living, or to their lawful issue them surviving; or in the event of the death of any one of my said children without lawful issue him or her surviving, then to the survivor or survivors of such child so dying without lawful issue, in the manner following, that is to say:

To my daughter Frances Dolan, the premises known by the number 200 West Twenty-fourth street, and also the premises number 420 Seventh avenue, in the city of New York, subject to all incumbrances thereon, by way of mortgage or otherwise.

To my daughter Theresa Dolan, the premises known by the number 318 Seventh avenue, in the city of New York, subject to all incumbrances thereon, by way of mortgage or otherwise.

To my son James P. Dolan, the premises known by the number 240 Seventh avenue, 456, 458 and 460 West Forty-first street, in the said city, subject to all incumbrances thereon, by way of mortgage or otherwise.

To my son Edward A. Dolan, the premises known by the street numbers 450, 452 and 454 West Forty-first street, and 238 Seventh avenue, in said city, subject to all incumbrances thereon by way of mortgage or otherwise.

To my said sons, James P. and Edward A. Dolan, the premises known by the street numbers 3 Worth street, and 5, 7 and 9 Mulberry street, in said city, as tenants in common, and not as joint tenants, and subject to all incumbrances thereon, by way of mortgage or otherwise; and also the lease of the premises numbers 67 and 69 West Broadway, in said city, subject to the rents and covenants contained in said lease, and subject also to all incumbrances thereon, by way of mortgage or otherwise.

*Sixth.*— On the decease of my said wife, I hereby give and devise to my daughter Theresa, and to her heirs and assigns forever, my said dwelling-house, number 202 West Twenty-fourth street, in said city, together with the lot of land upon which the same is erected, subject, however, to any incumbrances thereon, by way of mortgage or otherwise, at the time of the decease of my said wife. Should my said daughter die before

my said wife, without leaving lawful issue her surviving, I give and devise said dwelling-house and lot of land to my surviving children, and to their heirs and assigns forever, as tenants in common, and not as joint tenants, and subject to any incumbrances thereon, as aforesaid.

"*Seventh.*— All the rest, residue and remainder of my estate, real and personal, of which I may die seized or possessed, and not hereinbefore specifically bequeathed and devised, I give, devise and bequeath to my said children, and to their heirs and assigns forever, share and share alike."

The will named as executors the testator's wife, his daughter Frances, his two sons James P. and Edward A., James Lynch and Philip Lyons, "or such of them as may qualify." The wife and the two sons alone qualified. An order to show cause was issued, which was served upon Edward Dolan, one of the legatees named in the fourth clause of the will, but was not served upon the others. An order was made by the surrogate November 15, 1880, which recited, in substance, that debts to the amount of $16,823.22 remained unpaid; that it appeared "that the whole of said real estate is covered by mortgages, and that sufficient money for the payment of such debts cannot be advantageously raised by mortgaging or leasing the real property;" also that it appears to the satisfaction of the surrogate "that a part of the defendant's real estate cannot be sold without manifest prejudice to the heirs and devisees of said decedent;" it was, therefore, ordered and directed that said real estate be sold subject to the mortgages thereon, in order to pay such debts. The real estate was described in the order in eight parcels, the premises assigned to the widow for life being the eighth. The sale was made of each parcel separately. The eighth was not sold. The order confirming the report of the freeholder appointed to sell directed a conveyance of all the right, title and interest the testator had at the time of his death. The purchasers of all the parcels excepting the second, sixth and seventh completed their purchases and took deeds. The amount realized therefrom was $21,421.33. The purchasers of those three parcels

refused to complete the purchases, and they made motions before the surrogate to have the sales to them respectively canceled, on the grounds following, among others:

That the order to show cause was not served on two of the three legatees, whose legacies were made a charge on the real estate; that the executors as trustees were devisees, and should have been served with said order; that the petition asked for authority to sell, not to mortgage, lease or sell; that the order of sale was void because it did not direct simply a sale of property sufficient to pay debts, but ordered the unconditional sale of all the property; that if of any validity it only authorized a sale of sufficient to pay debts, and it having been sold in parcels, when sufficient was sold for the purpose there was no authority to sell the residue; that the lands are by the will charged with the payment of the debts, and no lands so charged could be sold by order of the surrogate; that the order confirming the report of the freeholder appointed to sell directs a conveyance simply of all the estate, right and interest which the testator had at the time of his death, whereas it should have directed a conveyance of the property.

Further facts appear in the opinion.


*John Vincent* and *Samuel Hand* for appellants.    This proceeding being a purely statutory one, the statute must be literally complied with in respect to the service and publication of the order to show cause.  (R. S., chap. 6, part 2, title 4, §§ 5, 6.)  Any creditor could present his claim on the day fixed for the distribution, and share in such distribution.  (2 R. S. [Edm. ed.] 11, §§ 40–42; id. 110, § 36.)  The court was right in exercising the discretionary power vested in it in selling all but the piece belonging to the widow.    (2 R. S. [Edm. ed.] 107, § 19; id. 104, § 1; New Code, § 2761, chap. 18.)    The purchaser not being a party to the proceedings cannot in this collateral way attack them.  (*Ackley* v. *Dygert*, 33 Barb. 176.)    None of the irregularities urged invalidate the proceedings.    (3 R. S. [6th ed.] 114, § 40.)

*Frederic DeP. Foster* for respondents. The order of sale was invalid because it ordered the unconditional sale of the premises in question with other property of the decedent, instead of so much as was necessary to pay his debts. (2 R. S. 103, §§ 18, 19; *Sharp* v. *Spier*, 4 Hill, 86; *Ackley* v. *Dygert*, 33 Barb. 191; *Jordan* v. *Poillon*, 77 N. Y. 521; *Stillwell* v. *Swarthout*, 81 id. 109; 3 R. S. [6th ed.] 736, § 32; id. 738, § 52; id. 739, §§ 62, 63; id. 638, § 109; 4 Kent's Com. 179, note *a; Stevens* v. *Cooper*, 1 Johns. Ch. 235–410; *Sawyer* v. *Lyon*, 10 Johns. 32; 9 Paige, 26; 6 id. 521; *Livingston* v. *Livingston*, 3 Johns. Ch. 157.) The petition of the executors is defective in form, as it prays for authority " to sell " so much of the real estate of the deceased as shall be necessary to pay his debts. (Laws of 1874, chap. 267.) The premises in question, being not only charged with the payment of legacies, but in effect with the payment of decedent's debts, could not be sold. (2 R. S. 102, § 14.) These legatees were directly interested in the proceedings for the sale of testator's real estate and were entitled to be made parties thereto. (*Jordan* v. *Poillon*, 77 N. Y. 518.) All persons interested in the estate must be served with the order to show cause. (*Corwin* v. *Merritt*, 3 Barb. 341; 2 R. S. 101, § 6; id. 100, § 2, sub. 5; *Rathbone* v. *Hooney*, 58 N. Y. 467; *Judson* v. *Gibbons*, 5 Wend. 224; *Dunning* v. *Ocean Nat'l B'k*, 61 N. Y. 502; *Dominick* v. *Michael*, 4 Sandf. 375; *Burritt* v. *Silliman*, 13 N. Y. 96.) It was necessary to make provision for unborn children. (*Monarque* v. *Monarque*, 80 N. Y. 320.) The affidavit of service of the order to show cause was fatally defective as it did not state originally that a copy of the order was delivered to and left with the persons claimed to have been served. (Code of Civil Proc., § 426; Gen. Rules of Practice, No. 18; *Sibley* v. *Waffle*, 16 N. Y. 190.) The surrogate has not adjudged any demands against the deceased to be valid and subsisting. (2 R. S. 102, §§ 13–14.) The bond of the freeholder is not such as the statute requires in amount. (2 R. S. 104, § 22.) The sale was not made in accordance with the statute, in respect to the incumbrances on the premises sold. (2

R. S. 105, § 35.) The order confirming the return of the free-holder is defective and irregular, in that it directs a conveyance of " all the estate, right and interest," which the testator had at the time of his death in the property sold, whereas it should simply have directed a conveyance of the property sold. (2 R. S. 105, § 30.) The court will never compel the purchaser, at a judicial sale, to accept a doubtful title. (*Seaman* v. *Hicks*, 8 Paige, 655 ; *The Brooklyn Park Commrs.* v. *Armstrong*, 45 N. Y. 248; *Mott* v. *Mott*, 68 id. 258 ; *Jordan* v. *Poillon*, 77 id. 521 ; *Argall* v. *Raynor*, 20 Hun, 267.) A purchaser at a judicial sale ought not to be compelled to accept a title resting only on adverse possession. (*Mott* v. *Mott*, 68 N. Y. 258.) The executors who failed to qualify are still trustees, and liable as such, until a formal renunciation and relinquishment of the trust. (*Judson* v. *Gibbons*, 5 Wend. 224 ; *Williams* v. *Conrad*, 30 Barb. 532 ; *Dunning* v. *Ocean Nat'l B'k*, 61 N. Y. 502 ; *Burritt* v. *Silliman*, 13 id. 93 ; *Argall* v. *Raynor*, 20 Hun, 267.) The defects in title and in the executor's proceedings to sell are such that the order of the Supreme Court canceling the sale to the respondents, and ordering his ten per cent and expenses to be repaid him was properly made and should be affirmed. (*Bartlett* v. *Torry*, 65 N. Y. 299 ; *Still-well* v. *Swarthout*, 81 id. 114 ; *Mott* v. *Mott*, 68 id. 258 ; *The Brooklyn Park Commrs.* v. *Armstrong*, 45 id. 248.)

Miller, J. The respondents refused to complete their respective purchases upon a sale made by an order of the surrogate of the city and county of New York, upon the ground that the title to the premises was defective. The alleged defects relate mainly to the proceeding before the surrogate which it is claimed is invalid, so that no title could be acquired. By the will of the testator three legacies were bequeathed to certain persons who were therein named, which were directed to be paid out of the rents, issues and profits of the real and leasehold estate and made a specific charge upon said estate. These legacies had not been paid, and two of said legatees were not personally served with the surrogate's order to show cause.

Upon this ground the General Term held that the purchasers were not bound to complete the sale, placing its decision upon the authority of *Jordan* v. *Poillon* (77 N. Y. 518). The case cited was an action for the partition and sale of lands where the legatees were not parties, and hence were not entirely precluded from a presentation of their claim, and it was held that as the question as to the lien of the legacies could not be determined so as to be binding upon them, and the purchasers might be subjected to the expense and hazard of a litigation in another action, they were not bound to fulfill. The doctrine laid down in the opinion in the case cited we think is well founded and should be adhered to, but while the rule stated may apply to a case of partition sale, where all the parties in interest have not been made parties and are not precluded from asserting their rights at a future day, it has no application to a special proceeding where it is entirely apparent that there has been a substantial compliance with the requirements of the statutes under which it was taken, and that no claim can afterward be made. Under such a state of facts nothing more is demanded and the title acquired is perfect and complete. Whether the statute has been complied with in the case considered is the question now presented, and it is important, therefore, to examine the provisions of the statute relating to the subject so far as they affect the objections now urged. The statute requires that in a proceeding before the surrogate for the sale of real estate for the payment of debts, that an order to show cause shall be first made, and that the same shall be published for four weeks in a newspaper printed in the county, and that a copy shall be served personally on every person in occupation of the premises of which a sale is desired, and on the widow, heirs and devisees of the deceased residing in the county. (2 R. S., chap. 6, part 2, tit. 4, §§ 5 and 6.) The legatees referred to were not devisees and do not come within the terms of the provisions cited, and a service upon them was not, therefore, required. It may be added that the rights of creditors are paramount to those of legatees, and although notice should be given them if required, and a failure to do so might, per-

haps, affect the regularity and the validity of the proceedings, yet in this case it would seem that no injury could accrue, for if the sale is completed there will be amply sufficient means realized to cancel the specific legacies referred to after the payment of debts.   It follows that there was no reason for relieving the purchasers upon the ground we have considered.

The objection is also urged that the surrogate had not jurisdiction to order more property to be sold than was necessary to pay the debts of the deceased and necessary expenses, and that he exceeded his authority in directing a sale of all of said real estate of the testator.   The authority of the surrogate as to what portion of the real estate shall be sold is derived from 2 Revised Statutes (Edm. ed.), 107, section 19, which vests the surrogate with a discretionary power to determine where the real estate consists of houses or lots, or of a farm so situated that a part cannot be sold without manifest prejudice to the heirs or devisees, that the whole or a part thereof, although more than may be necessary to pay such debts, may be ordered to be sold, and if a sale of the whole real estate appears necessary, it may be ordered accordingly.   The objection is that the surrogate's order for the sale of the whole was made upon the ground that it appeared that a part of the deceased's real estate cannot be sold without manifest prejudice to the heirs and devisees, and that it did not determine that a part thereof could not be sold without prejudice, and that this prejudice has reference to the situation of the premises.   The surrogate held that the situation was in reference to the *interest* of the heirs and devisees.   Whether the surrogate committed an error in this respect, it is not necessary to determine upon this appeal, for it was at most a defect or an irregularity of which the parties in interest alone could complain.   He had jurisdiction of the subject-matter, and if any error was committed only the heirs and devisees could take steps to raise the question by a review of the order, and not having done so it is final and conclusive.

The views we have expressed are fully sustained by the provision of the statute (chap. 82, Laws of 1850, § 1), which declares

that sales made by the order of the surrogate under the Revised Statutes and the acts amending the same, shall be deemed to be as valid and effectual as if made by a court of original general jurisdiction, and that the title of a purchaser shall not be impeached by reason of any omission, error, defect or irregularity in the proceedings, or by an allegation of a want of jurisdiction on the part of the surrogate except in the manner and for the causes that the same should be impeached and invalidated in case such sale had been made pursuant to an order of the court of original general jurisdiction.

Under this provision the surrogate's order, which was clearly within his jurisdiction, must be regarded, so far as the purchaser is concerned, as within his authority. If he has jurisdiction the purchaser is protected. If he has committed an error, the parties in interest can appeal, and if they fail to do this the order becomes a judgment of a court of original jurisdiction, and is an absolute decree that a sale shall be made. The purchaser has nothing to do with the question whether the evidence authorized the order of the surrogate. In accordance with this view this court has recently held that the purchaser, upon a foreclosure sale, cannot object to completing a purchase upon the ground that the real estate was sold together and not in parcels.

The objection urged, that the sale made was in excess of the debts, is of a similar character as that last considered, and for the reasons stated is not, we think, available to the purchasers upon a motion made to set aside the sale.

In regard to the claim made, that the decree in legal effect directs a sale of different parcels in accordance with the numbers, we think it will bear no such construction, and it is quite obvious that the numbers were merely intended to designate the different parcels of the real estate, and nothing beyond this.

Nor were any steps required to be taken especially with a view of precluding the issue of Theresa Dolan in case she should die before her mother, leaving issue.

The fifth clause in the will of the testator devises to the executors the residue of his real estate in trust, to apply the rents

as directed, during the life-time of his wife, for the support of his family and the payment of legacies, and directs that upon the death of his wife that they shall convey to such of his children as shall be then living, or to their lawful issue then surviving as stated, and to Theresa Dolan, No. 240 Seventh avenue, being the sixth parcel described in the decree. It is said that none of the executors, as devisees in trust, were served with the order of the surrogate to show cause. The answer is, that they were adult parties, have petitioned for the sale, taken part in all the proceedings, and thus not only knew but acquiesced in what was done. The executors and trustees could not very well, in the orderly conduct of the proceeding, have served upon themselves, as trustees or otherwise, and, we think, are in no position to object upon any such ground, or to question the title of the purchaser. They represent the *cestuis que trust*, and Theresa Dolan having been served with the order, the parties in existence have been notified so that it is not apparent how unborn children can, under any circumstances, have any claim or right. The real estate is liable for the payment of the debts of the testator, and the devisees take subject to such liability, and when they are notified, so far as is practicable in accordance with the statute, there is no ground for claiming that the unborn children can afterward assert any right. Any other rule would prevent a sale for the payment of debts in a case where by some contingent or remote possibility there might be other devisees besides those living at the time. This, clearly, was never intended, as it would set creditors at defiance and prevent an appropriation of an estate for the payment of the debts of the deceased. The rights of such unborn devisees, if any exist in such a proceeding, can be fully protected upon the distribution of the surplus remaining after the debts are paid, when the court can see that such interests as they may have are properly cared for.

It is also insisted that two of the executors named in the will who have not qualified should have been served with notice as devisees, and that they are still vested with and retain an interest in and are responsible for the trust estate. This

objection was not taken before the surrogate, and the only point raised was that the executors as trustees are devisees, but are not included in the petition and were not served with the order to show cause, as such devisees. If the objection had been presented to the surrogate in the first instance, for any thing that is made to appear, it might have been obviated by showing that these persons were deceased, or that they had renounced, or that they may have been deemed, by the surrogate, to have renounced under the statute (2 R. S., §§ 9, 10, 12, pp. 70 and 71.) No rule is better settled than that, in case the objection can be obviated, the question cannot be raised for the first time in an appellate tribunal.

As the persons named did not qualify, the presumption is that letters testamentary were issued to the other executors, and the former are thereupon under the statute to be deemed to be superseded thereby. (2 R. S., § 15, p. 71.) It should also be noticed that the will itself directs that only such executors named as may qualify shall be deemed executors. This objection is clearly without force.

We discover no objection to the order in directing a conveyance of the right, title and interest which the testator had at the time of his decease. This was all which could be sold, under the statute, and in the absence of proof of any defect of title, or a failure to show that a good title did not exist, furnishes no reason to the purchaser for refusing to take a deed.

The objection that the petition only asked for a sale, instead of permission to mortgage, lease or sell, is sufficiently answered by the fact that it appears from the petition, that a mortgage or lease would fail to accomplish the purpose intended. Nor is there any foundation for the claim, that the premises being charged with the payment of legacies, were in effect charged with the payment of debts. A legacy is not a debt, and when charged upon the land, it does not stand in the same position as a charge for the payment of debts. Some other objections are urged which are of a technical character, but as far as they are material, are so fully answered in the opinion of the surrogate, that an examination of them in detail is not required.

Most of the objections which we have discussed were not of a jurisdictional character, but rather relate to the form of the proceeding and cannot impair its validity. With some exceptions which have been stated, we think they are covered by the provisions of section 4. (3 R. S. [6th ed.] 114.)

The order of the General Term should be reversed, and that of the surrogate affirmed, with costs.

All concur, except RAPALLO, J., absent.

Ordered accordingly.