WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—April, 1884.

## WOLFE v. LYNCH.

*In the matter of the estate of* THOMAS HUGHES, *deceased.*

The limitations imposed upon a Surrogate's court by the circumstance that it is a creature of statute and not a court of general jurisdiction —declared.

The purchaser at a sale of a decedent's real property, made, pursuant to a Surrogate's decree, for the payment of his debts, is not recognized, by Code Civ. Pro., ch. 18, tit. 5, as a party to the proceedings, at any stage thereof, nor under any circumstances.

An executor cannot be prosecuted in a Surrogate's court, by a stranger to the testator's estate, for the recovery of damages arising out of transactions, relating to the estate, between the executor and the claimant.

Petitioner alleged that, at a sale of real property of decedent for the payment of his debts, made pursuant to a decree of the Surrogate's court, he bought the same and paid ten per cent. of the purchase money and auctioneer's fees, as required by the terms of sale ; that a search of the title disclosed the fact, previously unknown to him, that, at the time of sale, there was in force an order of the Fire

Department of New York city requiring the removal of the build-
ings on the premises, which greatly diminished the value of the
latter.   He also alleged defects in the proceedings, and prayed for
an order relieving him from the purchase, and directing the executor
to return to him the percentage and fees paid, and to reimburse him
for his expenses for searches.    The answer alleged a tender of a
proper conveyance, and knowledge, on petitioner's part, of the ex-
istence of the order at the time of sale ; and denied the allegations
of irregularity.—

*Held,* that (1) the Surrogate's court was powerless in the premises ; (2) the
order sought could not be granted against the executor under Code
Civ. Pro., § 2481, subd. 5, because the duty to refund the money,
etc., was not "imposed upon him by statute or by the Surrogate's
court under authority of a statute; nor under id. subd. 11, be-
cause the matter was not made "subject to the cognizance of" the
court ; (3) the application was equivalent to a request to the court to
try, as between one over whom it had no control, and another whose
official acts were mainly subject to its jurisdiction, a question of fact
in the nature of a fraud ; (4) the petition must be dismissed.

Matter of Dolan, 26 *Hun*, 46 ; s. c., 88 *N. Y.*, 309—commented upon ; *
Bulkley v. Staats, 4 *Redf.*, 524—followed ; Matter of Campbell, 1
*Tucker*, 240—doubted.

A PETITION was presented in this matter showing,
among other things, that the petitioner, George Wolfe
attended, in September, 1883, a sale of real estate situ-

* The following is the opinion, referred to by the learned surrogate,
in his opinion herein, and filed May 26th, 1881 :

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.

*In the matter of the application of the executor of the will of* PETER DOLAN
*deceased, for leave to sell so much of decedent's real estate as shall be neces-
sary to pay his debts.*

THE SURROGATE.—William Nelson, Jr., Felix Donnelly and Frederick
Moeller, three of the purchasers at the sale ordered by the Surrogate in
the above matter, severally apply to be relieved from their purchase
herein.   The said three petitioners urge substantially the same objections
to the fulfilment of their several contracts of purchase, so that it seems
unnecessary to pass upon each motion separately.

The first and chief question to be considered, is, has the Surrogate au-
thority to order a sale of all the real estate of the testator, where a sale of
all is not necessary to pay the debts, if in his judgment he shall consider
that a sale of a part would be prejudicial to the heirs and devisees; and,

ated in the former town of Morrisania, by virtue of an order of this court made in 1873, which real estate was then a part of the territory of this county, but was shortly thereafter annexed to the county of New York; that said petitioner purchased said premises at said sale for the sum of $5,325, and paid to the surviving executor of said deceased, John Lynch, ten per cent. ($532.50) of the purchase money and $20, auctioneer's fees, in compliance with the terms of sale; that the time for taking the title to the same, and payment of the balance, was extended to November 28th, 1883; that, after so purchasing the property, he employed a lawyer to examine the title, at an expense of $105; that, on the day fixed, he was prepared to pay the balance of the purchase money, and to take the title to said premises and the buildings thereon, but that said executor was not then and was not now able to convey said premises and buildings; that, at the time of sale there was an order of the Bureau of Inspection of

---

if he has such authority, then what may be regarded as prejudicial to them

This discretionary power of the Surrogate is claimed by the counsel for the executors to be vested in him by 2 R. S., 103, § 19, which provides that "If such real estate consist of houses or lots, or of a farm so situated that a part thereof cannot be sold without manifest prejudice to the heirs or devisees, then the whole or a part thereof, although more than may be necessary to pay such debts, may be ordered to be sold; and if a sale of the whole real estate shall appear necessary to pay such debts, it may be ordered accordingly."

The real estate of the testator was situate in the city of New York, and was liable to be sold for the payment of his debts, and is specifically devised by the will of the testator to different parties, viz.: No. 200 West 24th street and 420 Seventh avenue to his daughter Frances Dolan, who has since died, leaving her brothers James and Edward and her sister Teresa joint owners of said premises; No. 318 Seventh avenue and No. 202 West 24th street to his daughter Teresa, with a life estate in said No. 202

Buildings of the Fire Department of the city of New York, and for some time prior thereto had been, requiring the owner of the brick buildings upon said premises to remove the same, of which order the petitioner was ignorant at the time of sale, and if he had known of it, he would not have bidden within $1,500 or $2,000 as much as he did. It was also alleged that the existence of the order was a defect in, or incumbrance upon, the title; that the sale was unauthorized for the reason that the order therefor was granted "without any proper petition or proper proceeding therefor, and for the further reason that there were defects in the proceedings and papers on which said order was based." And he, therefore, prayed that an order might be made relieving him from said purchase, and directing said executor to pay to him said ten per cent. and the auctioneer's fees, with interest, and also the amount which he had expended for searches, with costs.

The answer, among other things, denied all knowl-

---

West 24th street to his widow; Nos. 456, 458 and 460 West 41st street to his son James P. Dolan; Nos. 450, 452 and 454 West 41st street and No. 308 Seventh avenue to his son Edward A. Dolan, and No. 3 Worth street and Nos. 3, 5, and 7 Mulberry street to his sons Edward and James, jointly, besides which the widow of the testator is given an annuity of $2,000.

It appears that all of said real estate is covered by one or more mortgages of unequal amounts. The Surrogate, therefore, in the exercise of what he adjudged to be his discretionary power under the statute above referred to, made an order directing the sale of the whole of the real estate of the testator, reserving however from said sale said premises No. 202 West 24th street (in which the testator's widow has a life estate), unless the sale thereof should be necessary to realize enough to pay said debts, in which case said premises were also to be sold.

The question then is, had the Surrogate authority to direct the sale of all the real estate of the testator; and the answer must be that he had such authority, provided the premises were so situated that a part thereof

edge as to the expenses alleged to have been incurred for searches ; admitted that there was such an order for the removal of the brick buildings, and alleged that, on the day fixed for the completion of the purchase, respondent tendered a proper conveyance of said premises to the petitioner, that the purchaser knew of the said order for removal of buildings before the day of sale, having been informed thereof by several persons, and had taken a copy thereof before he bid upon the premises at the sale ; and denied all the allegations as to the irregularity of the proceedings on which the sale was based.

THOMAS H. COOK *and* JOSEPH FETTRETCH, *for petitioner.*

FRANK E. BLACKWELL, *for executor.*

THE SURROGATE.—It is objected, by the counsel for the executor, that this court has no power to grant the relief sought. If it has not, then, plainly, it should decline to act.    Being a creature of the statute,

could not be sold without manifest prejudice to the heirs and devisees.

The objectors insist that the word " situated " has reference to the location, size, and improvements upon the land to be sold, and not to its ownership, but the statute above referred to is much broader than the interpretation which they put upon it, for the situation referred to is not only the location, size and improvements upon the land itself, but its situation in reference to the interests of the heirs and devisees.

It seems to me that, if a part only of the demised premises herein had been ordered to be sold, a manifest injustice would have been done to the devisee of the premises sold, because such sale would have obliged him to bring an action in equity against the devisee whose premises were left unsold, subjecting him in all probability to a long, tedious and expensive litigation ; for in this proceeding the Surrogate would have no right or authority to adjust the equities between the parties who are the specific devisees of the said real estate ; whereas, by a sale of the whole, the value of the real estate is definitely fixed, and the equities of the several devisees in the surplus, after payment of the debts can be

having all its jurisdiction defined by it, an assumption to act beyond the prescribed limits cannot be justified. Where the statute confers a power without prescribing the mode of its exercise, it may follow the rules of the common law in its execution. So, it has authority to exercise powers which are incidental and subordinate to the grant of the main power. Were it a court possessed of general jurisdiction, this difficulty would not be encountered. But as it is not, it becomes necessary to examine the statute, in order to ascertain whether it is clothed with any authority to act in reference to the matters involved in this proceeding.

The order directing the sale of the premises was made under the provisions of the statute as they existed before the taking effect of the present Code, but the sale was made since. Nevertheless, those statutes are applicable. I may, however, assume, in the consideration of the matter, as most favorable to the petitioner, that the sale and subsequent proceedings are

---

easily ascertained and without a resort to a suit in equity for that purpose.

It is quite clear, to my mind, that the recitation in the order of sale, that it appeared that a part of the decedent's real estate could not be sold without manifest prejudice to the heirs or devisees, sufficiently shows the authority of the Surrogate to order the sale of the parts so ordered, though more than was necessary to pay the debts, and that the purchasers have nothing to do with the question whether sufficient facts were presented to the Surrogate to justify such an order, as the record is not required to contain the evidence of the facts upon which the order was made, though in this case the record title shows sufficient of itself to justify the order.

I am of the opinion that the heirs and devisees alone could raise that question, and they only by review of the order, and not having done so, it is final and conclusive.

In Jackson v. Irwin (*10 Wend.*, *441*), it was held that evidence of the abuse of power by administrators was inadmissible to defeat the title of a

governed by the present law, although there can be discovered no material difference between the latter and the former, in so far as the question here involved is concerned.

No provision is found in those statutes, or in title 5 of the 18th chapter of the Code, which recognizes the purchaser of the premises as a party, at any stage of the proceeding, or under any circumstances. Here, after the sale was made by the executor, he filed his report thereof, and subsequently an order was duly made confirming the same, and directing the conveyance. By § 2775, notice of application for the order confirming the sale is required to be given only "to each party who has appeared." Section 2776 prescribes that "an order, confirming a sale, must direct the person making the sale to execute the proper conveyances, upon compliance, on the part of the purchaser, or purchasers, with the terms of sale." A duty is thus imposed upon the person making the sale, the proper performance of which

purchaser under a Surrogate's order (see Wood v. McChesney (*40 Barb.*, *417;* Atkins v. Kinnan, *20 Wend.*, *240*).

The objection that the petition only asks for the *sale* instead of the mortgage, lease or sale of the property seems to be sufficiently answered by the facts set forth in the petition, which clearly show that an attempt to mortgage or lease would be idle, because of the heavy incumbrances and the inadequate income derived from the leases of the premises; besides the heirs and devisees seem to be the only parties interested in the question or entitled to object.

As to the alleged incumbrance by way of lease of the store floor and cellar of No. 240 Seventh Avenue made by the executors, it seems to be clear that the purchase was not made subject to that lease, and that the purchaser is entitled to the possession of the premises divested of that apparent incumbrance, but as he invokes the order of this court to relieve him from his purchase, I am of the opinion that the relief asked may be granted upon a proper condition that the executors shall not be able to give him title so divested, and that the motion should be granted

may be enforced, on the application of any party to the proceeding, but it imposes no obligation whatever upon the purchaser. If he refuses to comply with the terms of sale, he cannot be coerced by this court, to which he is in nowise subject, to do so (see Butler v. Emmett, *8 Paige, 12*).

The only courses open to the person making the sale, in such an event, would be either to abandon it and cause a resale, or to bring an action in a court of general jurisdiction to compel a specific performance of the contract. On the other hand, if the executor, or other person making such sale, were contumacious, and refused to convey as ordered, he could, on the application of any party, be punished for disobedience; or the purchaser could bring his action in the proper forum to enforce like performance of the bargain, and to recover his damages for the breach thereof. To entertain this proceeding would be to establish the principle that a stranger may sue an executor in this court to recover

as to that purchaser, unless a conveyance of the premises, free from the force or incumbrance of said lease shall be tendered to the purchaser within ten days after the entry of the order hereon, in which case his motion should be denied.

The objection to the jurisdiction of the Surrogate raised by the counsel for the purchaser, Moeller, that the lands of the decedent, including the premises purchased by him, are by the testator's will charged with the payment of $9,000 of legacies, and expressly charged with the payment of decedent's debts, seems to me untenable, for the reason that the legacies, though so charged, are by law subject to the payment of decedent's debts and because such debts are not expressly charged on the real estate, but are directed to be paid out of the rents, issues and profits of the real estate which authorizes the executors to so devote them, but does not prejudice the right of creditors to resort to the real estate for the payment of their debts under the statute.

It is quite clear that a testator has no power to compel a creditor to wait for the collection of his debt beyond the time prescribed by law;

such damages ; and also, that the executor might pro-
secute such stranger here for the same purpose.   This
is not the proper arena for such struggles.   The power
to hear and determine such controversies is nowhere con-
ferred upon Surrogates' courts.   To illustrate the fal-
lacy of the proposition that it is, let us take the in-
stance of the sale of a horse or other chattel by the ex-
ecutor or administrator in the due course of adminis-
tration, the conditions of which are that the purchaser
shall pay down a certain percentage, and the residue
at some future period, when it shall be delivered to
him.   He pays the percentage, but at the time fixed for
delivery, having in the meantime, · as he thinks, dis-
covered some good reason why he should not consum-
mate the bargain, he declines to do so.   Would it not be
absurd to suppose that either could maintain a proceed-
ing in this court to recover damages against the other,
or otherwise seek here a remedy for an alleged wrong ?
In this court, executors and administrators are amen-

otherwise years might intervene before the rents and profits of the real
estate would be sufficient to pay the debts.

The objection that the executors are also devisees, and as such not
included in the petition, seems to me to be without force, for the reason
that they are adult parties, have petitioned for the sale, participated in all
the proceedings, and it would have been an idle ceremony to have procured
service upon themselves as trustees or devisees in trust, or otherwise, of
the order to show cause, and that they are thereby estopped from ques-
tioning the purchaser's title.

This view would seem to cover the objection that the possibility of
one of the decedent's children having issue hereafter and dying before
the widow, whereby such issue would be interested in and take the share
of the deceased parent, or if represented by the trustees, such title would
be divested.

But the argument of counsel would seem to prevent the sale of a de-
cedent's real estate for the payment of debts in all cases where no trustee
was appointed by the will, and provision should be made for after born
children.

able for their acts to persons interested in the estates they represent, and not to strangers.

The order sought could not be made under the 5th subdivision of § 2481 of the Code, because the duty to refund the money, etc., is not imposed upon the executor by statute, nor by this court under authority of any statute ; nor under subdivision 11 of the same section, because, as I have endeavored to show, I do not consider this matter as subject to the cognizance of this court. If it were, then following the course and practice of a court having, by the common law, jurisdiction of such matters, the issue would have to be tried by a jury, unless it were waived, or a reference ordered (Code, §§ *968, 969, 970*).

The doctrine of, and statute relating to, the intervention of parties (Redf. Surr. Pr.; and Code, § *2617*) have no application here. The petitioner is not a person interested in the estate of the testator. If he were, he

If, however, in this case there shall be a larger sum realized on the sale than sufficient to pay the debts and legacies, it will be the duty of this court not to distribute the surplus, but provide for the same being held until the same may be distributed under the provisions of the will.

The affidavit of the service of the order to show cause being defective and not cured by § 40 of 3 R. S., 114 (*6th ed.*), should be amended or corrected, and filed *nunc pro tunc*. Having above decided that the order directing the sale of all the real estate of the testator, except the premises devised to his said widow for life, was just and proper, it seems unnecessary to consider the objection that the sale was not made in the numerical order in which the different parcels of real estate were numbered, except merely to remark that the decretal order does not and was not intended to prescribe or specify the order in which said real estate should be sold, the numbers were merely intended to designate the different parcels of land, and it would not have been a departure from the requirements of said order if the freeholder had sold the real estate in the inverse order of the numbers of said plots, or in any other order as in his discretion he deemed best.

There only remain some technical objections to be considered :

has made no application on the subject, so that the question is not before me.

Counsel for petitioner refers me to the Matter of Dolan (*26 Hun, 46 ;* s. c., on appeal, *88 N. Y., 309*) as authority to sustain his view that this court has jurisdiction to entertain this application, and quotes from the decision of Surrogate CALVIN, in his return in that case, in which he expresses the opinion that he had " complete jurisdiction over the matter." I have not been furnished with a copy of the opinion of my learned brother, (which is unreported) and must, therefore, determine this question without the benefit of the light thrown upon it by his discussion of it, but if I had, I fear I should have been compelled to differ from him for the reasons above given. It does not seem to have been raised, discussed or considered in that case, either at the general term or in the Court of Appeals. It appears to have been similar to this, with the important exception, that, in that instance, there was no question of

---

1st. It is objected that the bond given by the said freeholder was not in double the amount of the value of the property ordered to be sold. It is very apparent that the Surrogate could not know, to a certainty, what the value of said real estate would prove to be on the sale, until after such sale had taken place. The said bond was fixed after deducting the amount of the mortgages upon said real estate, upon the theory that the equity therein was $50,000. The sale was an exceptionally good one, realizing much more than the most sanguine of the parties in interest could reasonably have expected, and there is no pretence but that said freeholder has paid into this court all the money he has received, and no suggestion is even made but that he has faithfully discharged all his duties.

2nd. The terms of the sale show that such sale was not made free of mortgage incumbrances, but they simply required the purchasers to have all the testator's bonds cancelled by permitting said purchasers to pay the mortgage and deducting the amount thereof from the purchase money.

3rd. It is also objected that only the debts proved before the referee can be taken into consideration in calculating the amount of debts to be

fact to be determined, as there is here.   Had this element existed in that case, a consideration of the consequences it must necessarily have involved would, probably, have impressed a conviction upon the mind of the court, that it had no power to act in the premises. In the case of Bulkley v. Staats (*4 Redf.*, *524*), I had occasion to consider a cognate question; and I adhere to and reiterate the views there expressed.   There is a case briefly reported in 1 Tucker's R., 240 (Estate of James Campbell), in which the Surrogate directed the refunding of the percentage and auctioneer's fees to the bidder, but refused to order him reimbursed the amount expended for searches.   The power of the court to do so apparently received no consideration, and the case can hardly be regarded as an authority of much weight.   The direction to refund, seems to have been made on the application for an order confirming the sale, which was refused on account of irregularity.

I am asked to try, in this proceeding, between a per-

---

paid, but that this objection is not tenable is perfectly manifest when we consider that the statute expressly declares that any creditor who has not previously come in and proved his claim may present his claim on the day fixed for distribution and share in such distribution (*2 R.  S.  Edm.  ed.*, *111*, §§ *40-42*).

4th.  The objection that the Surrogate has not entered in his books the demands which upon the hearing he has adjudged to be valid, is not well taken, for the reason that the order making such adjudication was made, signed and filed on the date of said order, and the same will be if it has not been already recorded in the Surrogate's books of record.   All orders are so recorded in their regular order and as rapidly as the same can be done with the clerical force which the Surrogate has in his employ, it might as well be said that the probate of a will was null and void because said will was not recorded on the very day of its admission to probate, which with the Surrogate's present clerical force would be an utter impossibility.

5th.  A reference is made by the counsel for Mr. Moeller to several adjudicated cases, showing, as he claims, the need of great care in pro-

son over whom this court has no control and another whose official acts are mainly subject to its jurisdiction, a question of fact in the nature of a fraud. If entertained, it would have to be tried either upon affidavits —a very unsatisfactory means of arriving at the truth —or by the oral examination of witnesses. The parties would thus be deprived of a trial by jury of an important matter, and with which, of all others, a jury is supposed to be most competent to deal. In effect, this proceeding involves points pertaining to the nature of an action for specific performance, in so far as a knowledge, or want of knowledge, by the petitioner, of the order for the removal of the building, or buildings, is concerned. If he had such knowledge, before the sale, his excuse for non-fulfilment of his contract would fail, and he would be obliged to consummate it. Otherwise, he would be successful. I look in vain for any power given, either directly or by necessary implication, which will warrant this court to try such a case,

---

ceedings of this kind, and the fatal result of even a slight deviation from the provisions of the statute, and in that connection he quotes the following cases, viz.: Corwin v. Merritt (*3 Barb.*, *341*); Ackley v. Dygert (*33 Barb.*, *176*); Matter of Hemiup (*3 Paige*, *305*); Farrington v. King (*1 Bradf.*, *182*).

In Corwin v. Merritt, it is held that the Surrogate obtained no jurisdiction of the subject matter, because the proceedings failed to show that the executors had delivered to the Surrogate a just and true account of the personal estate, and because the order to show cause why a sale should not be made, was not proved to have been published according to law.

In Ackley v. Dygert, the court says, after referring to the several requirements of the statute: "The petition presented complies with the statute in but one particular, to wit, the amount of debts." In the Matter of Hemiup, it was held that the Surrogate had no jurisdiction to order a sale of real estate, where it appeared that there was personal estate in the hands of the administratrix more than sufficient to pay all the debts of the intestate; and in Farrington v. King it was held that if

and award damages for the neglect of an executor to fulfil such a contract. The legislature has never, by any act which has come under my observation, manifested an intention to invest it with power so large, or to impose upon it a duty so onerous.

Application dismissed.

the Surrogate had failed to enter in his book the demands which upon the hearing he adjudged to be valid, the error can be corrected afterwards by directing such an entry *nunc pro tunc*, and that after jurisdiction is obtained, errors or irregularities in its exercise cannot be impeached collaterally, but only on appeal.

It will thus be perceived that neither of the decisions above referred to, has any direct application to the case under consideration, indeed neither of the three objectors herein goes so far as to say that the jurisdictional facts are not properly alleged in the original petition and sustained by the proof taken before the referee.

It is now provided by law that any such sale shall not be invalidated nor in any wise impeached by reason of any omission to serve upon any minor, heir or devisee, personally or by publication a copy of the order to show cause required by statute, nor by reason of any irregularity in any matter or proceeding after the presenting of any petition and the giving notice of the order to show cause why the authority or direction applied for should not be granted and before the order confirming such sale (*3 R. S., 6th ed., 114*, § *40*).

6th. The premises designated as parcel No. 6, conveyed to the testator by the Schuyler deed, has been in the quiet possession of the testator for thirty-four years, and it is alleged, and was so stated on the hearing before me, that Greene conveyed before his marriage, so that his widow can have no claim for dower in the said premises.

*Finally.* The counsel for the executors express their willingness to rectify any of the technical objections that have been raised by the said objectors by orders *nunc pro tunc,* by filing affidavits of the service of the order to show cause upon the devisees, or by admitting such service and by said devisees joining in the conveyances to the said purchasers.

I am, therefore, of the opinion that all the proceedings herein except those cured by the above statute, except as above stated, have been regular, that the Surrogate has complete jurisdiction over the matter; that the purchasers at said sale who have not completed their purchases and taken their deeds of conveyance are legally bound to do so; and that the several motions herein should be denied.