WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—May, 1888.

CROMWELL *v.* PHIPPS.

*In the matter of the disposition of the real property of* JOSEPH BELLESHEIM, *deceased, for the payment of his debts.*

A Surrogate's court has no jurisdiction, in a special proceeding instituted under Code Civ. Pro., § 2749, for the disposition of a decedent's real property for the payment of his debts, to compel a purchaser at the instance of a freeholder appointed to sell the same, to accept the deed and pay the balance of the purchase money.

The doctrine of Wolfe v. Lynch, 2 *Dem.*, 610, on this point re-asserted.

The general rule of courts of equity, as to who shall be parties to a controversy, does not prevail in such a court. The purchaser, not being made a party by the statute, cannot be deemed such, nor can he intervene and become a party, to the special proceeding.

The proof of absence for seven years or more, requisite to found a presumption of death, under Code Civ. Pro., § 841, need not be direct and positive; but such absence may be fairly inferred from facts which clearly point to that conclusion.

A purchaser, upon a sale, under the statute, of a decedent's real property, having refused to complete the contract on the ground of a defect in the title, and the freeholder appointed to sell having moved to compel him to accept the deed and to pay the balance of the purchase money, it appeared that the premises in question had in November, 1851, been conveyed to Sarah B., and that, in 1861, "Sarah W., formerly B.," conveyed the same premises to the subsequent owner by a deed duly acknowledged,—the certificate of acknowledgment stating that S. W., the grantor, had been subjected to a private examination separate and apart from her husband. There was evidence of diligent and totally ineffectual efforts to ascertain facts concerning the existence of the grantor and her husband, and the fact of marriage.—*Held*,

1. That the consent of the husband, if any, was unnecessary, and the certificate of a separate examination, surplusage.
2. That, assuming the husband to have been, at the time of the conveyance by Sarah, a tenant by the curtesy initiate, he must be presumed to be dead, and his life estate extinguished.
3. That the purchaser should pay the balance of the purchase money, and accept the conveyance.

Allen v. Reynolds, 4 *J. & S.*, 297—approved.

PURSUANT to a decree to that effect, David Cromwell, a freeholder appointed for the purpose, duly sold one of several parcels of decedent's real estate to Edward Lestrange Phipps, in February, 1888, for the sum of $1,380, of which sum the purchaser paid ten per cent., in compliance with the terms of sale. In March following, on notice to the proper parties, a decree was duly entered confirming the sales. Subsequently, on being tendered a proper deed of conveyance of the premises, the purchaser declined to pay the balance of the purchase money and accept the deed on the ground of an alleged defect in the title to the premises. Whereupon, on an affidavit alleging said facts and on motion to the purchaser, the freeholder moved for an order requiring him to take title thereto and to comply with the terms of sale.

Affidavits in opposition were submitted, the most

important facts shown thereby being, that the premises were, on November 1, 1851, conveyed to one Sarah S. Bogert of New York City, by deed which was duly recorded on June 3, 1852; and that Sarah S. Wood, formerly Bogert, of New York City, conveyed the same premises to Daniel B. Pierson of the same city, by deed dated March 28, 1861, and properly recorded May 30, 1862; the certificate of acknowledgment of the last mentioned deed being as follows:

" State of New York,       }
City & County of New York, } ss.:

On this twenty-eighth day of March, 1861, before me personally came Sarah S. Wood, to me personally known to be the same person mentioned and described in and who executed the foregoing conveyance, and acknowledged to me that she executed the same; and on a private examination by me made, separate and apart from her husband, acknowledged to me further, that she executed the same freely and without any fear or compulsion of her husband.

JAMES R. CUMMINGS, Notary Public."

It further appeared that diligent search and inquiry were made for information, in regard to who the said Sarah S. Wood, formerly Bogert, and her husband were, and as to their marriage, without success, both in Mount Vernon, where the premises were situated, and in New York City, and that after exhausting all means of inquiry, no information on the subject had been obtained.

CROMWELL V. PHIPPS.

FREDERICK WM. HOLLS, *for the motion.*

ISAAC N. MILLS, *opposed.*

THE SURROGATE.—I cannot divest my mind of the conviction that this court has no power to entertain and determine the question here presented. It was so held in the case of Wolfe v. Lynch (2 *Dem.*, 610), where reasons were given at length. That decision was reversed at General Term, the opinion on reversal being reported in 33 *Hun*, 309. Nothing to alter the views expressed by this court is uttered in that opinion. There is, however, this distinction between that case, and the present one. There, the application was made by the purchaser, while here, by the petitioner.

Surrogate's courts have jurisdiction only over parties interested in estates, either as executors, administrators, devisees, legatees, heirs at law, next of kin, husband or wife, creditors, assignees, guardians and wards, and such as the statute prescribes as parties —as, in this case, a freeholder appointed to sell. The matter in which this motion is made is known to the statute as a proceeding to mortgage, lease or sell real estate for the payment of decedent's debts. To this proceeding Mr. Phipps, the purchaser, is in no wise a party. He was a stranger throughout the proceeding which resulted in the decree of sale. The fact that he purchased the premises, did not make him a party to a proceeding which was ended, except the entry of a decree of distribution. It cannot be said that the general rule of courts of equity prevails as to who shall be parties in Surrogates' courts. It is

only those persons, or that class of persons, expressly designated in the statute, who can be such parties (Redf. Pr., 3d ed., 87). Nor do Surrogates' courts possess the general powers of courts of equity (id., 54), such as the coercing of a purchaser to pay the money and take the title. Section 2752 of the Code specifies what persons shall be named in the petition for sale of real estate, and § 2754 directs as to what parties shall be cited, while the next section as amended in 1887 (chap. 147) provides that certain persons, among whom a purchaser is not named, may intervene and be made parties to the proceeding. The maxim, " *expressio unius est exclusio alterius*" is clearly applicable to exclude the purchaser as a party.

It seems to me that an executor, having power by the will to sell real estate, and having agreed to sell it to a stranger to the estate, who, for an alleged defect of title, or other cause, failed and refused to fulfill his contract, might, with equal propriety, come here and ask this court to make an order to compel the purchaser to pay the money and take his deed. The relation of the purchaser to the freeholder, in the one case, and that of the purchaser to the executor, in the other, seems to be precisely the same. Neither, by the act of purchase, becomes a *party* to the proceeding. If Mr. Phipps is not a party, then any order that might be made against him would, as is conceived, be a nullity. Suppose the order asked for here be made, and he refuse to obey it, what can next be done? Has the court any power to enforce obedience to an order it has no authority to make?

In the opinion in 33 *Hun*, stress is laid upon the

incidental powers conferred on Surrogates' courts, by subd. 11 of § 2481 of the Code. That subdivision provides that a Surrogate has power, "with respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court, having *by the common-law,* jurisdiction of such matters, except as otherwise prescribed by statute; and to exercise such incidental powers, as are necessary to carry into effect the powers expressly conferred." No court, by the common-law, had jurisdiction to order a sale of real estate of decedents for the payment of debts. By the hard and unjust rule of that law, land, descended or devised, was not liable to simple contract debts of the ancestor or testator (4 Kent's Comm., 419; 3 Blacks. Comm., 430). So that there is no course and practice of any common-law court for the Surrogate to pursue in this case. It is true, he has power, in a proper case, to direct a sale of real estate for the payment of decedents' debts. He may make a decree to that effect, and, on a report of sale made, may make a decree confirming it. The only other thing he is empowered by statute to do, as already stated, is to make a decree distributing the proceeds after they are paid into court.

I cannot conceive that the compelling payment by a purchaser at such a sale, not being a party to the proceeding, or adjudicating as to the validity of the title to the premises sold, can be an incident to the powers expressly conferred, with a view of carrying those powers into effect. It is the business of the ex-

ecutor, or other person making the sale, to collect the money from strangers, and not the Surrogate's, and when collected, to pay it into court. That act, in so far as the power conferred on the Surrogate is concerned, is not incident to it. "Incident," according to Jacob (Law Dict., Title "Incident"), is "a thing *necessarily* depending upon, appertaining to, or following another that is more worthy or principal." Thus, timber trees are incident to the freehold, and so is a right of way. The powers which were regarded by the courts as incidental to the express powers conferred upon Surrogates and their courts, will, many of them, be found enumerated in Dayton's Surr., 5, 6 (3d. ed.); Redf. Pr., 24 (1st. ed.) and fall within Mr. Jacob's definition. The enactment of the last paragraph of subd. 11 of § 2481 was intended to sanction and cover such and the like cases only, and not to furnish an excuse to travel afield in the exercise of powers unfettered by the term "incidental" in its strictest sense. Where an executor, having power to sell real estate for the payment of legacies, is required to account and pay a legacy, and it appears that the assets are insufficient for the purpose, and he has not sold the real estate, the power of the Surrogate to order it sold would seem to be more clearly possessed as incidental, than in the present case; and yet it has been held that he has no such power (Bevan v. Cooper, 72 *N. Y.*, 317—327).

It is difficult to conceive that the trial of so grave a question as that relating to the title to real estate was intended to be classed among powers which are merely incident to the main power to order its sale. The in-

cidental would thus appear to be greater than the chief power granted. No direct or incidental power, however, can be exercised over a person not a party, except over witnesses, or persons guilty of contempt, and no person can be made a party by this court, other than such as the statute designates. By § 2547 of the Code, the Surrogate may send any disputed question as to title, or any other matter, in such a proceeding as this, to be tried before a jury at the circuit, or county court, but he can only do so when the dispute arises between parties. How can the question about the title, in this case, be sent to a jury, when but one party to it is in court. By saying that he is such party, and by coming in and submitting the question here does not render the stranger a party. Consent will not confer jurisdiction. Nevertheless, fully conscious of the fallibility of the human judgment, and out of respect for the decision of the appellate court, it is proposed to briefly consider the application upon its merits.

By § 3 of an Act of the legislature passed in 1860 (chap. 90), it was enacted that "Any married woman possessed of real estate as her separate property, may bargain, sell and convey such property, and enter into any contract in reference to the same, but no such conveyance or contract shall be valid without the assent in writing of her husband, except as hereinafter provided." It is, therefore, claimed on the part of the purchaser that, as the certificate of acknowledgment to her deed to Pierson shows that she was, at its date, in 1861, a married woman, and no written consent of the husband appears to have been given, the

title is defective.  In 1862, that part of the act of 1860, requiring the written consent of the husband, was repealed by amendment (Chap. 172).  In 1873, the Superior Court of N. Y., with the acts of 1849, 1860 and 1862, before it, in the case of Allen v. Reynolds (4 *J. & S.*, 297), held that, since the Act of 1849, the acknowledgment of a married woman to the execution of a deed, need not state that she, on a private examination, separate and apart from her husband, acknowledged that she executed it freely and without any fear or compulsion of her husband.  So far as I can find, the correctness of that decision has not been questioned by any of the courts of this state. A certificate of that character is evidence only of the facts required or authorized to be stated (Water Com'rs v. Lansing, 45 *N. Y.*, 19; Parr v. Greenbush, 72 *id.*, 463).  Therefore, that portion of the certificate should be disregarded.  Hence, the only evidence we have in relation to her being a married woman, at the date of the execution of the deed, is, that she described herself as "Sarah S. Wood, formerly Bogert." That fact is, of itself, ambiguous in its character. She may have changed her name by marriage, by application to the county court, for the purpose of obtaining a legacy, or for some other cause.

But assuming that Mrs. Wood had a husband living at the time of the execution of the conveyance by her, the most that the husband could claim as an interest in the land at that time, if there were issue, would be a right as tenant by the curtesy initiate.  It does not appear that there was issue of the marriage.  All that we have, by way of positive evidence, was seizin

in Mrs. Wood.  Again, assuming that there were seizin, marriage and issue, then the husband had an initiate estate determinable at his death, whether consummate by her death, or not.   In that case, § 841 of the Code, which is the same as 1 R. S., 749, § 6, except that it is made applicable to special proceedings, and is made to apply to persons without the United States, instead of beyond sea, would have to be considered in this connection.   It is twenty-seven years ago, that the deed in question was given of premises at Mount Vernon, the grantor then being a resident of New York City.   The affidavits show that diligent and exhaustive efforts have been made by the respective and intelligent counsel in both places, to ascertain something about Sarah S. Wood, formerly Bogert, and her husband, and about their marriage, which efforts have ended in complete failure.   I do not understand that the proof of absence, for seven or more years, must be direct and positive, but such absence may be fairly inferred from facts which clearly point to that conclusion.   Doubtless, it would have been more satisfactory, had the affidavit stated exactly what was done in that regard.   Still, the quest has been made intelligently and with an honest effort, with the result stated.   It follows that the husband, if there were one, is presumed to be dead.

It is not easy to understand what interest the husband, if there were one, had in the premises, if there were no issue, under the acts of 1848 and 1849, concerning the rights of married women.   In the case of Wing v. Schramm (13 *Hun*, 377), Justice DYKMAN held that one thing intended by § 3 of the act of

1860 was to give the husband some control over the alienation of his wife's land, and that it was very reasonable to suppose that that was the only aim and intention of the section,—thus providing that such conveyance should not be valid against him and his marital rights without his written consent; and that, if such were the true construction, the grantee of the wife, without such consent, took a title valid against all the world, except the husband. This seems to be a fair and just construction of the act. Curtesy being out of the question, and the husband having no direct or contingent estate in the premises, we are remitted to the rule as to the presumption of death. In cases other than those provided for by statute, the courts have adopted a similar rule (King v. Paddock, 18 *Johns.*, 141; Merritt v. Thompson, 1 *Hilt.*, 550; Eagle's Case, 3 *Abb. Pr.*, 218; McCartee v. Camel, 1 *Barb. Ch.*, 455). There is no hesitation in applying the rule to a case of this nature, where no perceptible interest of the person supposed to be dead, could be affected if living, other than to enable him simply to act the part of an obstructionist.

Without considering other questions that spring from the facts, it is determined that there is no valid reason why the purchaser should not pay the purchase money and accept the conveyance.